-1-

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

DEBORAH ANN RUBY-PHILLIPS,

  *Plaintiff,*

vs.

  Case No. 11-CV-2348-EFM

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

  *Defendant.*

### MEMORANDUM AND ORDER

  Plaintiff Deborah Ann Ruby-Phillips ("Plaintiff") seeks review of a final decision by the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits and supplemental security income benefits.  Plaintiff claims that the Commissioner failed to assess the appropriate weight to Plaintiff's treating physicians' opinions, failed to properly evaluate Plaintiff's mental impairments, failed to properly evaluate Plaintiff's credibility, and relied on flawed testimony from the vocational expert.  Because the Court finds that the Commissioner failed to adequately weigh Plaintiff's treating physician's opinion and failed to allow Plaintiff to cross-examine the vocational expert ("VE"), the Court reverses and remands the case to the Commissioner.

## I.     Legal Standard

Pursuant to 42 U.S.C. § 405(g), "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." Upon review, the Court must determine whether substantial evidence supports the factual findings and whether the administrative law judge ("ALJ") applied the correct legal standards.[1] "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance."[2] The Court is not to reweigh the evidence or substitute its opinion for the ALJ.[3] However, the Court must examine the record as a whole, including whatever in the record detracts from the ALJ's findings, to determine if the ALJ's decision is supported by substantial evidence.[4] Evidence is not substantial if it is overwhelmed by other evidence or if it is a mere conclusion.[5]

To establish a disability, a claimant must demonstrate a physical or mental impairment that has lasted or can be expected to last for a continuous period of twelve months and an inability to engage in any substantial gainful work existing in the national economy due to the impairment.[6] The Commissioner uses a five-step sequential process to evaluate whether a

---

[1] *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

[2] *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (quotations and citations omitted).

[3] *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (citations omitted).

[4] *Wall,* 561 F.3d at 1052 (citing *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007)).

[5] *Id.* (citing *Grogan v. Barnhart*, 399 F.3d 1257, 1261-62 (10th Cir. 2005)); *see also Gossett v. Bowen*, 862 F.2d 802, 805 (10th Cir. 1988) (citation omitted).

[6] 42 U.S.C. § 1382c(a)(3)(A) (supplemental security income); *see also id.* § 423(d)(1)(A) (disability insurance).

claimant is disabled.[7]  The claimant bears the burden of proof during the first four steps.[8]  In steps one and two, the claimant must demonstrate that she is not presently engaged in substantial gainful activity and that she has a medically severe impairment or combination of impairments.[9] "At step three, if a claimant can show that the impairment is equivalent to a listed impairment, [s]he is presumed to be disabled and entitled to benefits."[10]  If, however, a claimant does not establish an impairment at step three, the process continues.  The Commissioner assesses a claimant's residual functional capacity ("RFC"), and at step four, the claimant must demonstrate that her impairment prevents her from performing her past work.[11]  The Commissioner has the burden at the fifth step to demonstrate that work exists in the national economy that is within the claimant's RFC.[12]  The RFC is used to evaluate the claim at both step four and step five.[13]

## II.  Background

Plaintiff Deborah Ann Ruby-Phillips applied for a Title II period of disability and disability insurance benefits and a Title XVI supplemental security income on August 17, 2006, alleging that her disability began on March 1, 2004.  Plaintiff claimed disability due to depression, post-traumatic stress disorder ("PTSD"), lower- and upper-back problems, stroke,

---

[7] 20 C.F.R. § 404.1520(a); *Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010).

[8] *Lax*, 489 F.3d at 1084.

[9] *Id.* (citations omitted).

[10] *Id*.

[11] *Id.*; *see also* 20 C.F.R. § 416.920(a)(4)(iv).

[12] *Lax*, 489 F.3d at 1084; 20 C.F.R. § 416.920(a)(4)(v).

[13] *See* 20 C.F.R. § 404.1520(a)(4)(iv)-(v).

neck problems, and high blood pressure. Her applications were denied initially and on reconsideration.

Plaintiff requested a hearing before an administrative law judge, which occurred on May 12, 2009. On September 3, 2009, the ALJ issued an unfavorable decision finding that Plaintiff was not under a disability. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since March 1, 2004—her alleged disability onset date. At step two, the ALJ determined that Plaintiff had the severe impairments of a depressive disorder, PTSD, a history of polysubstance abuse and prescriptive medication addiction and abuse; and degenerative disc disease of the cervical and lumbar spine with history of chronic neck and lumbar pain, treated with narcotic pain medication. At step three, the ALJ found that the evidence did not establish that the claimant, absent substance abuse, has an impairment or combination of impairments that meets or equals a listed impairment. The ALJ concluded that Plaintiff retained the RFC to perform light work with simple, routine, and repetitive tasks. Based on this RFC, the ALJ found that Plaintiff was capable of performing work as a cashier, office helper, and photocopy machine operator. For that reason, the ALJ concluded that Plaintiff was not disabled under the Social Security Act.

Plaintiff requested review of the ALJ's decision by the Appeals Council, which denied her request on April 28, 2011. Thus, the decision of the ALJ stands as the final decision of the Commissioner. Having exhausted her administrative remedies, Plaintiff seeks relief from this Court.

### III.    Analysis

Plaintiff claims that the ALJ erred (1) in failing to properly evaluate the opinions of Plaintiff's treating physicians; (2) in evaluating Plaintiff's mental impairments; (3) in making her

credibility finding; and (4) in relying on the VE's testimony. The Court will address each argument in turn.

**A.       Evaluation of the Medical Opinion Evidence**

Plaintiff argues that the ALJ erred in giving little weight to the opinions of Plaintiff's treating physician, Dr. Yoakam, and the government's consultative examiner, Dr. Spencer. According to Plaintiff, Dr. Yoakam's opinion was entitled to controlling weight and Dr. Spencer's opinion was entitled to significant weight.

1.       Dr. Yoakam's Opinion

In January 2009, Plaintiff's treating physician, Dr. Yoakam, completed a questionnaire regarding Plaintiff's impairments and the work-related limitations associated with these impairments. Dr. Yoakam diagnosed chronic neck and back pain secondary to degenerative disc disease, degenerative joint disease of both knees, chronic pain requiring narcotics, a borderline personality disorder, PTSD, depression, polyarthralgias, a history of illicit drug use, and hyperlipidemia. She opined that Plaintiff could stand or walk less than one hour in an eight hour workday and needed to get up at least once per hour. She also opined that lifting caused Plaintiff pain, that her symptoms would increase if she were placed in a competitive work environment, and that her medical condition prevented her from keeping her neck in a constant position. Dr. Yoakam opined that Plaintiff could not perform a full-time competitive job that required the ability to keep the neck in constant position, that Plaintiff was capable of low work stress, that Plaintiff would need to take frequent breaks throughout the day, and that Plaintiff would be absent from work two or three times per month.

As noted above, the ALJ gave Dr. Yoakam's opinion little weight.[14] The ALJ found that her opinion was "not consistent with the totality of the medical evidence, including physician's own treatment records," and that it was not supported by the March 2009 letter to Plaintiff advising her that Dr. Yoakam would be withdrawing from care because of Plaintiff's violation of the office's narcotics pharmaceutical policy.[15] The ALJ also noted that the Dr. Yoakam's findings were an opinion on the ultimate issue of disability, which is an issue reserved to the examiner.

The Tenth Circuit has explained the nature of the inquiry regarding a treating physician's medical opinion.[16] The first step is to determine if the opinion is to be given "controlling weight."[17] "[A]n opinion must be given controlling weight if it is well-supported by medically acceptable clinical or laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. If the opinion is deficient in either of these respects, it is not to be given controlling weight."[18] If the ALJ determines that the treating source's opinion should not be given controlling weight, the second step requires the ALJ to state "how much weight the opinion is being given (including whether it is being rejected outright) and give good reasons,

---

[14] When discussing Dr. Yoakam's opinion, the ALJ stated, "[T]he above opinion and assessment of Dr. Box is being given little weight." ALJ Decision, Doc. 6-3, p. 25. Given the context of this statement, the Court assumes that the ALJ intended to use the name "Dr. Yoakam" instead of "Dr. Box" in her decision.

[15] ALJ Decision, Doc. 6-3, p. 25.

[16] *Krauser v. Astrue*, 638 F.3d 1324, 1330-31 (10th Cir. 2011).

[17] *Id*. at 1330 (citing *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003)).

[18] *Id*. (citations omitted).

tied to the factors specified in the cited regulations for this particular purpose, for the weight assigned."[19] Those factors are:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.[20]

When applying these factors, the ALJ's decision must be "sufficiently specific to make clear to any subsequent reviewers the weight he gave to the treating source's medical opinion and the reason for that weight."[21]

In *Krauser*, the Tenth Circuit found that the ALJ erred when he simply stated that the treating physician's opinion was inconsistent with other evidence, including the physician's own records.[22] The court found this analysis to be inadequate because it did not sufficiently reference those portions of the record with which the treating physician's opinion was inconsistent.[23] The Tenth Circuit remanded the case to the ALJ with the requirement that he specifically identify what in the treating physician's own records he found to be inconsistent with the treating physician's opinion.[24]

---

[19] *Id*.

[20] *Id*. at 1331 (citing 20 C.F.R. §§ 404.1527(d)(2-6)).

[21] *Id.* (quotation omitted).

[22] *Id*.

[23] *Id*.

[24] *Id*. at 1331, n.3.

Here, the ALJ erred because, like the ALJ in *Krauser*, she did not cite specific evidence from the record to support her assessment that Dr. Yoakam's opinion was inconsistent with the medical evidence in the record. As the Tenth Circuit noted in *Krauser*, "it may be possible to assemble support for this conclusion from parts of the record cited elsewhere in the ALJ's decision, but that is best left for the ALJ himself to do in the proceedings on remand."[25] Accordingly, the Court remands the case to the ALJ to identify what in Dr. Yoakam's own records and the other medical records she finds inconsistent with Dr. Yoakam's opinion and explain the inconsistency.

2.   Dr. Spencer's Opinion

Dr. Spencer evaluated Plaintiff in June 2009, after Plaintiff's administrative hearing before the ALJ. Plaintiff reported to Dr. Spencer that she had back, neck, and knee pain, which she rated at a level seven on a scale of one to ten. On examination, she had some limitations in the range of motion of her neck and complained of discomfort at the base of her cervical spine, with maximal range of motion activity. Her back and neck did not show any gross deformities. She manipulated door knobs without any difficulty and wrote a legible signature and was able to pick up and stack coins. She insisted on using a walker to walk 100 yards and was able to climb down from the examining table but did this cautiously and used the walker to push herself onto the table.

Dr. Spencer assessed significant limitations for Plaintiff. He opined that Plaintiff could lift and carry twenty pounds occasionally and ten pounds frequently. She could stand and walk less than two hours total in an eight-hour workday and required a hand-held assistive device for

---

[25]   *Id.*

ambulation. Dr. Spencer also opined that Plaintiff could sit for less than six hours during the workday and must alter sitting and standing to relieve pain or discomfort. Plaintiff was limited in her ability to push and pull with lower extremities.

The ALJ gave Dr. Spencer's opinion "little weight." She found that it was largely based on Plaintiff's reported history to him and not supported by the totality of the evidence. Plaintiff argues that Dr. Spencer's opinion was based on his examination of Plaintiff, not just her subjective complaints, and that there is no evidence in the record that contradicts his findings.

The Court finds that the ALJ did not err in giving Dr. Spencer's opinion regarding Plaintiff's functional limitations little weight. As the ALJ noted, Dr. Spencer's opinion appears to be largely based on Plaintiff's subjective account of her condition as it is not consistent with Plaintiff's past medical history. Dr. Spencer opined that Plaintiff could stand or walk less than two hours and sit for less than six hours in the workday. However, the medical evidence shows that Plaintiff had normal musculoskeletal exams and full range of motion in her lower extremities. The October 2008 examination notes from Dr. Habib state that Plaintiff had full range of motion in all joints in the lower extremities, no focal muscle bulk wasting, and strength of 5/5 throughout. Treatment notes from Dr. Whitlow's office from April 2007 through June 2007 stated that Plaintiff had normal musculoskeletal exams. And, Dr. Yoakam's treatment notes from July 31, 2008, state that Plaintiff's musculoskeletal exam was normal.

The ALJ's assessment is further supported by the fact that when Plaintiff was following her medication regimen, she stated that her pain was controlled. Treatment records from Dr. Whitlow's office from June 2007 and January 2008 state that Plaintiff reported her back pain was controlled with her current pain medication regimen. Furthermore, the medical records contain many instances in which Plaintiff used her pain complaints in an attempt to obtain more

narcotic medication, which she abused. For example, Dr. Cristiano's treatment records from March 2005 state that Plaintiff was terminated from treatment because she was abusing her prescription drugs and seeking early refills. Treatment records from Dr. Grote from July 2006 state that at one visit, Plaintiff pleaded with Dr. Grote for more pain medication because her pain had become worse. Although the records stated that Dr. Grote did not trust her to use it correctly, he refilled her prescription. Four days later Plaintiff returned to Dr. Grote's office stating that all of her medication was gone. In May 2007, Plaintiff presented to Dr. Whitlow's office twice for treatment, complaining of back pain. At the first visit, the musculoskeletal exam was normal. At the second visit, Dr. Whitlow noted that Plaintiff had no spinal tenderness and recommended that Plaintiff use over-the-counter pain medication. Finally, Dr. Yoakam's treatment records also indicate that Plaintiff misused her medications. Accordingly, the Court finds that the ALJ's decision to give Dr. Spencer's opinion little weight is supported by substantial evidence in the record.

**B.     Evaluation of the Plaintiff's Mental Impairments**

Plaintiff contends that the ALJ erred in failing to indicate what weight she gave to the opinions of Ms. Harper, Plaintiff's treating mental health nurse practitioner, or Dr. Mintz, the government's consultative psychologist. She claims that, instead of relying on Ms. Harper or Dr. Mintz, the ALJ only relied on the opinion of the non-examining state agency medical sources when finding that Plaintiff's mental impairments limited her to simple, routine work.

Ms. Harper, an advanced registered nurse practitioner, completed a Mental Health Questionnaire regarding Plaintiff in July 2008. Harper stated that Plaintiff had periods of mood lability, difficulty concentrating, mood swings, problems with memory, racing thoughts, and panic attacks. She also opined that Plaintiff was not capable of maintaining employment and that

she had sever chronic pain, degenerative joint disease, and emotional limitations that would interfere with her ability to sustain employment.

Ms. Harper is not an "acceptable medical source" under the regulations, and thus, her opinion is not a medical opinion that the ALJ is required to evaluate as such.[26] Regardless, the ALJ was still required to explain the amount of weight she gave to Ms. Harper's opinion:

> The adjudicator generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case.[27]

Plaintiff argues that the ALJ did not even mention Harper's opinion. But, this is not the case. The ALJ specifically referred to the Mental Health Questionnaire dated July 7, 2008, which was prepared by Harper, and thus was her opinion. Specifically, she noted that "this medical source also noted that because of claimant's severe and chronic pain, she would have limitations (physical or emotional) that would interfere with employment."[28] The ALJ also stated that she was giving little weight to Harper's opinion because it was not supported by her own treatment records and was not consistent with the totality of the medical evidence. This explanation, along with the ALJ's discussion of Plaintiff's mental state in the treatment records of Dr. Whitlow, Dr. Cristiano, and Dr. Mintz, allows the Court to sufficiently "follow the adjudicator's reasoning."[29]

---

[26] 20 C.F.R. §§ 404.1513, 416.913.

[27] SSR 06-03p, 2006 WL 2329939, at *6 (Aug. 9, 2006); *see also Bowman v. Astrue*, 511 F.3d 1270, 1274 (10th Cir. 2008) (noting that SSR 06-03p requires ALJs to evaluate medical opinions from providers who are not "acceptable medical sources" and explain the weight given to them).

[28] ALJ Decision, Doc. 6-3, p. 26.

[29] SSR 06-03p, 2006 WL 2329939, at *6.

The Court also finds that Plaintiff failed to show that the ALJ erred in assigning little weight to Harper's opinion. There are no other treatment notes from Harper in the record. Furthermore, other medical records in the record show that, absent substance and medication abuse, Plaintiff had normal psychiatric examinations. Progress reports from Dr. Whitlow's office from 2007 show benign psychiatric findings, and that claimant was oriented times three, with intact recent and remote memory, judgment, and insight, and normal mood. In addition, treatment records from Dr. Cristiano do not refer to significant mental symptoms. Thus, the Court discerns no harmful error with respect to the ALJ's treatment of Harper's opinion.

With respect to Dr. Mintz's opinions, Plaintiff argues that the ALJ erred in failing to indicate what weight she gave them in her decision. Dr. Mintz examined Plaintiff twice—in June 2005 and January 2009. Dr. Mintz's treatment notes from the June 2005 examination state that he diagnosed Plaintiff with episodic poly-substance abuse, episodic alcohol abuse, opioid withdrawal, depressive disorder, and anxiety disorder. He opined that Plaintiff's "most immediate problem area appears to be her addictive behaviors and anxiety. She appears depressed, her life style appears very chaotic, she do not appear stable to the point where she would be able to function successfully in a full time employment setting consistently."[30] The ALJ did not address this opinion in her decision. However, the ALJ did discuss Dr. Mintz's January 2009 opinion in detail, noting that Dr. Mintz found Plaintiff to be well-dressed and groomed and oriented times three with no reports of hallucinations or delusions. The ALJ noted that Dr. Mintz found that Plaintiff appeared depressed, that she appeared to function in the average intellectual range with similar levels of memory functioning, and that her immediate

---

[30] Dr. Mintz's Treatment Records, Doc. 6-11, p. 390.

attention capability appeared in intact and she could do basic arithmetic. The ALJ further noted that Dr. Mintz's diagnostic impression was of a depressive disorder, not otherwise specified, PTSD, alcohol abuse, in remission, and poly-substance abuse, in remission.

The ALJ did not specify the weight she gave to Dr. Mintz's opinions. The Court finds this error, however, to be harmless.[31] The ALJ was not required to assign weight to Dr. Mintz's March 2005 opinion that Plaintiff would not be able to function successfully in a full time employment setting because this was an opinion on the ultimate issue of disability, which is reserved to the Commissioner.[32] Furthermore, the ALJ clearly evaluated Dr. Mintz's January 2009 opinion in her decision, and Dr. Mintz's opinion is consistent with the limitations that the ALJ placed in Plaintiff's RFC when she limited Plaintiff to simple, routine, and repetitive job tasks.

### C. The ALJ's Credibility Determination

Plaintiff alleges that the ALJ's credibility finding is not supported by substantial evidence. At the administrative hearing in May 2009, Plaintiff testified that she experienced pain in her back, neck, and knees. She stated that she could stand for ten minutes using her walker and sit for thirty minutes if done right after taking her medications. She testified that her depression causes crying symptoms and that she has short-term memory difficulties. When describing her daily activities, Plaintiff stated that she has "bad days" about five days a week,

---

[31] *See Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004) (approving harmless-error analysis when, "based on material the ALJ did at least consider (just not properly), we could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way"); *Keyes-Zachary v. Astrue*, 2012 WL 4076114, at *3 (D. Kan. Sept. 18, 2012).

[32] 20 C.F.R. §§ 404.1527(e), 416.927(e).

and on those days, she spends most of her day sitting in a recliner and only gets up to take food or medicine.

An ALJ's credibility determinations are generally treated as binding on review.[33] "Credibility determinations are peculiarly the province of the finder of fact" and will not be overturned when supported by substantial evidence.[34] Thus, in reviewing the ALJ's credibility determinations, the Court usually defers to the ALJ on matters involving witness credibility.[35] But, " 'findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings.' "[36]

In evaluating a disability claim based on pain, the ALJ must first determine whether the objective medical evidence demonstrates that a claimant suffers from an underlying medically determinable physical or mental impairment.[37] If so, the ALJ must consider the relationship between the impairment and the alleged pain.[38] If a loose nexus exists, the ALJ must then consider all the evidence, both objective and subjective, in determining whether a claimant's disability is disabling.[39] Factors that may be relevant in assessing the claimant's testimony include, but are not limited to:

---

[33] *Talley v. Sullivan*, 908 F.2d 585, 587 (10th Cir. 1990); *Broadbent v. Harris*, 698 F.2d 407, 413 (10th Cir. 1983).

[34] *Wilson v. Astrue*, 602 F.3d 1136, 1144 (10th Cir. 2010); *accord Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005).

[35] *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994); *but see Thompson v. Sullivan*, 987 F.2d 1482, 1490 (10th Cir. 1993)(stating that "deference is not an absolute rule").

[36] *Wilson*, 602 F.3d at 1144 (quoting *Huston v. Bowen*, 838 F.2d 1125, 1133 (10th Cir. 1988)).

[37] *Luna v. Bowen*, 834 F.2d 161, 163 (10th Cir. 1987); *Williams v. Bowen*, 844 F.2d 748, 753 (10th Cir. 1988).

[38] *Luna*, 834 F.2d at 164.

[39] *Id*.

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.[40]

The regulations and Social Security Ruling 96-7p suggest factors that overlap and expand upon those stated by the court: daily activities; location, durations, frequency, and intensity of symptoms; type, dosage, effectiveness, and side effects of medications taken to relieve symptoms; and other factors concerning limitations or restrictions resulting from symptoms. The ALJ is only required to "set[] forth the specific evidence he relies on in evaluating the claimant's credibility."[41] The ALJ is not required to make a "formalistic factor-by-factor recitation of the evidence."[42]

Plaintiff asserts that the ALJ based her credibility findings solely on the fact that Plaintiff had "exaggerated pain behavior" and that her pain complaints were based on her attempt to obtain narcotic medication that was misused by Plaintiff. Plaintiff also asserts that there is not substantial evidence to support the ALJ's findings. The Court disagrees.

Contrary to Plaintiff's assertion, the ALJ set forth the factors in 20 C.F.R. §§ 404.1529 and 416.929, which overlap those set forth in SSR 96-7p, when evaluating Plaintiff's credibility. The ALJ based her credibility findings not only on Plaintiff's request for and misuse of narcotic medication, but also her activities of daily living and the objective medical evidence. Furthermore, the ALJ's findings are supported by substantial evidence from the record.

---

[40] *Thomson*, 987 F.2d at 1489 (citations omitted).

[41] *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).

[42] *Id*.

The ALJ found that there was nothing in the evidence of record and testimony to indicate that Plaintiff had significant problems with the aspects of daily living. The ALJ noted that Plaintiff reported that she is able to care for her personal needs, provides care to her thirteen year old daughter, performs household chores, drives, and shops for groceries and personal items and that Plaintiff's aunt reported that Plaintiff had no problems caring for her personal needs. The record shows that Plaintiff completed a Function Report in October 2008 for which she had the memory and attention capacity to complete the form and provide two additional pages of narrative.

The ALJ also found that the objective medical evidence did not support the degree of limitation that Plaintiff testified to during the hearing. Specifically, the ALJ noted that she considered Plaintiff's complaints of disabling orthopedic pain, but found that they are not consistent with record. As the Court previously discussed, the medical evidence shows that Plaintiff had normal musculoskeletal exams, full range of motion in her lower extremities, and that her pain was controlled with her medication regimen.

Plaintiff argues that the ALJ's credibility findings are not supported because no medical source ever opined that Plaintiff " 'exaggerated' her pain complaints."[43] The Court agrees that no medical provider expressly stated that Plaintiff "exaggerated her pain complaints." However, the ALJ did not base her credibility findings solely on this statement. The ALJ also based her credibility findings on Plaintiff's attempts to obtain narcotic medication, which, as discussed above is supported by substantial evidence in the record, and her lies about her medication use. The ALJ stated:

---

[43] Plaintiff's Brief, Doc. 7, p. 25.

> Claimant's credibility has also come into question. Specifically, treatment records of Dr. Yoakam refer to claimant's lying about medication use and has been noted to increase her opioid usage from "a secret stash." Dr. Yoakam noted to claimant that if she and claimant could not develop a trusting patient-physician relationship, claimant would be terminated from their clinic. It has been noted by the above physician that claimant was "obviously" misusing her medications.[44]

The ALJ properly considered Plaintiff's drug-seeking behavior in evaluating Plaintiff's credibility and tied that behavior to substantial evidence in the record.[45] Therefore, the Court does not see any reason for discounting the ALJ's assessment of Plaintiff's credibility.

**D.   Whether the ALJ Relied on Flawed Vocational Expert Testimony**

Plaintiff claims that the ALJ relied on flawed vocational expert testimony in determining that Plaintiff could not perform her past work but that she could perform work as a cashier, office helper, and photocopy machine operator. Specifically, Plaintiff argues that the ALJ violated Plaintiff's due process rights because the ALJ precluded her from cross-examining the VE. The Court agrees.

"Disability applicants must be afforded procedural due process protections in the hearing setting."[46] As a part of procedural due process, claimants have the right to cross-examine vocational experts.[47] In this case, the ALJ cut off Plaintiff's cross-examination of the VE after one question, stating that she was going to hold a supplemental hearing in which Plaintiff could cross-examine the VE. The ALJ, however, never held a supplemental hearing before issuing her

---

[44]   ALJ Decision, Doc. 6-3, pp. 24-25.

[45]   *Poppa v. Astrue*, 569 F.3d 1167, 1171-72 (10th Cir. 2009).

[46]   *Glass v. Shalala*, 43 F.3d 1392, 1396 (10th Cir. 1994).

[47]   *Haddock v. Apfel*, 196 F.3d 1084, 1090 (10th Cir. 1999) (citing *Glass*, 43 F.3d at 1396).

decision, thereby precluding Plaintiff from cross-examination. The Court finds that the ALJ's failure to allow cross-examination violates Plaintiff's due process rights.

Defendant argues that any error the ALJ made in precluding cross-examination is not reversible error under *Glass v. Shalala*[48] because Plaintiff has not shown that cross-examination would have altered the evidence before the ALJ. The Court finds *Glass* to be distinguishable from this case. In *Glass*, the court rejected claimant's argument that her procedural due process rights were violated when the ALJ allowed the VE to testify when the claimant was not present.[49] Although the Court found that cross-examination would not alter the evidence before the ALJ, the court also found that the claimant waived her right to cross-examination when, during a subsequent hearing, the claimant's counsel stated that he had no objections to the VE's testimony and nothing further for consideration.[50] In this case, Plaintiff has not waived her right to cross-examine the VE. Accordingly, the Court reverses and remands the case to allow Plaintiff to cross-examine the VE.[51]

---

[48] 43 F.3d 1392 (10th Cir. 1994).

[49] *Id.* at 1397.

[50] *Id.* at 1396-97.

[51] Because the Court finds that the ALJ did not go through the requisite analysis regarding Dr. Yoakam's opinion and did not allow Plaintiff to cross-examine the VE, it is unnecessary for the Court to consider Plaintiff's remaining claims regarding Plaintiff's RFC and the ALJ's decision that there is alternative work that Plaintiff could perform.

**IT IS ACCORDINGLY ORDERED** this 15th day of November, 2012, that the judgment of the Commissioner is reversed and remanded.

**IT IS SO ORDERED**.

*/s/ Eric F. Melgren*
ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE